T.C. Memo. 2020-20

UNITED STATES TAX COURT

CHRISTIAN BERND ALBER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4817-19W.                    Filed January 30, 2020.

P filed a whistleblower claim with the Whistleblower Office ("WBO") of the Internal Revenue Service ("IRS"). The claim alleged illegal action by the German court system and other violations by individuals whom the WBO could not identify. Without referring the claim to an operating division of the IRS or otherwise considering or addressing its merits, the WBO summarily rejected it on the grounds that "the information provided was speculative and/or did not provide specific or credible information regarding tax underpayments or violations of internal revenue laws."

<u>Held</u>: The WBO did not abuse its discretion in summarily rejecting P's claim.

Christian Bernd Alber, for himself.

<u>Ryan Z. Sarazin</u>, <u>Bartholomew Cirenza</u>, and <u>Shari A. Salu</u>, for respondent.

**[*2]**                     MEMORANDUM OPINION

GUSTAFSON, <u>Judge</u>:  Pursuant to section 7623(b)(4),[1] petitioner Christian

Bernd Alber has appealed the determination of the Whistleblower Office ("WBO")

of the Internal Revenue Service ("IRS") to reject his claim for a nondiscretionary

whistleblower award.  Respondent, the Commissioner of the IRS, moved for

summary judgment under Rule 121, asserting that the undisputed material facts of

record demonstrate that the WBO did not abuse its discretion when it summarily

rejected Mr. Alber's claim for an award.  For the reasons stated below, we will

grant the Commissioner's motion.

Background

The following facts are based on the administrative record.[2]

<u>Mr. Alber and his claim</u>

Mr. Alber is a non-U.S. citizen residing in Germany.  He submitted to the

WBO a Form 211, "Application for Award for Original Information", that alleges

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 as in effect at all relevant times (codified in 26 U.S.C.), and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The parties have filed the parts of the administrative record upon which they rely, and no objections have been lodged by either side as to the parts of the record that have been submitted or any parts that have been omitted.

[*3] that the "fake 'Federal Republic of Germany' banana republic has been treating * * * [him] badly and in illegal, unconstitutional ways including stealing * * * [his] monies and assets in [the] form of taxes and tax fraud based on invalid tax laws from 1954."

His Form 211 alleges violations of the income tax laws of Germany, as well as "identity theft, tax theft, suppression and destruction of * * * [his] life through fake statements" and generally alludes to rights under the United States and German Constitutions that afford "right[s] for * * * [his] property." In the attachments to his Form 211, Mr. Alber identified 17 discrete persons or entities as the perpetrators of his alleged grievances, but he asserted no facts that would connect any of these alleged bad actors to a specific violation of an internal revenue law of the United States.

Rather, the conduct of which he complains appears to have occurred in Germany and, more specifically, within the German court system: Mr. Alber cites as the basis of his claim his divorce, custody issues concerning his children, a stolen business interest in a hotel in Thuringia, Germany, a "highly criminal 'psychological assessment'" by a German doctor "even though * * * [he is] totally healthy", and the freezing of his accounts and inheritance by the "criminal, illegal, fake German 'authorities' and 'Courts' to hinder * * * [him] from traveling" to the

[*4] United States.  Mr. Alber submits that all of this illegal activity was done without any sanction or "license of the Allies or US authorities", but he cites no other nexus to the United States or to any internal revenue law of the United States.

The WBO's consideration of the claim

The administrative record developed by the WBO during its consideration of Mr. Alber's claim shows that the WBO received his Form 211 on December 11, 2018, and assigned it a master claim number along with 17 separate related claim numbers.  On December 19, 2018, the WBO sent Mr. Alber a letter acknowledging receipt of his claim.

An initial classifier in the WBO reviewed Mr. Alber's Form 211 on February 6, 2019, and recommended that the claim be rejected because the WBO was unable to positively identify any of the 17 alleged taxpayers "believed [presumably by Mr. Alber] to have failed to comply with the internal revenue laws."  As to each of the 17 alleged taxpayers, the initial classifier also concluded that the issues that Mr. Alber alleged related to "income and holdings in Germany", that he was "pleading for help from foreign governments", and that his claim had "no specific and credible information about a [United States] federal tax issue or non-compliance."

**[*5]** Thereafter, a tax analyst for the WBO drafted an award recommendation memorandum ("ARM") based largely on the recommendations of the initial classifier. The ARM recommended to the Manager of the Initial Claim Evaluation unit of the WBO that Mr. Alber's claim be rejected for the same reasons that the initial examiner identified.

## The WBO's rejection of the claim

On February 8, 2019, the WBO formally rejected Mr. Alber's claim with the issuance of a letter entitled "Final Decision Under Section 7623(a)". The letter stated, in relevant part, that "[t]he claim has been rejected because the information provided was speculative and/or did not provide specific or credible information regarding tax underpayments or violations of internal revenue laws."[3]

## Tax Court proceedings

Mr. Alber timely petitioned this Court on March 8, 2019, for review of the WBO's decision. The Commissioner has filed a motion for summary judgment, to which Mr. Alber objects.

---

[3]Because the WBO summarily rejected the claim and did not forward it to an operating division of the IRS for consideration of a possible audit, the IRS did not proceed with an administrative or judicial action on the basis of information provided by Mr. Alber. Accordingly, the Commissioner also did not collect any proceeds as a result of an administrative or judicial action predicated on such information. However, these facts are not cited as the basis for the WBO's rejection of Mr. Alber's claim, and these facts are not the basis of our decision.

**[*6]**                                       Discussion

I.      Summary judgment

The purpose of summary judgment is to expedite litigation and avoid unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we draw factual inferences in the light most favorable to the nonmoving party, Sundstrand Corp. v. Commissioner, 98 T.C. at 520--in this instance, Mr. Alber.

II.     Standard and scope of review

We held in Kasper v. Commissioner, 150 T.C. 8 (2018), that in a whistleblower case our review is generally restricted to the administrative record and that we review the WBO's decisions not de novo but rather for abuse of discretion. An abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

In Lacey v. Commissioner, 153 T.C. __, __ (slip op. at 37-38) (Nov. 25, 2019), we held that we review for abuse of discretion the WBO's summary

[*7] rejection of a claim for failing to meet certain threshold requirements even where, because of that rejection, there has been no administrative or judicial action initiated by the IRS as a result of the information that is the basis of the whistleblower's claim.

III.    Analysis

Pursuant to section 7623, the WBO is charged with performing the initial evaluation of whistleblower claims to determine whether they meet the minimum standards for an award.  See 26 C.F.R. sec. 301.7623-1(c)(4), Proced. & Admin. Regs.[4]  This initial evaluation occurs before any referral to an IRS operating division for further action on the information set forth in the claim.  Consequently, a threshold rejection by the WBO will necessarily preclude any administrative or judicial action against any taxpayer and any collection of proceeds from the taxpayer on the basis of the information provided.  See Lacey v. Commissioner, 153 T.C. at __ (slip op. at 37).  The threshold criteria by which the WBO evaluates a claim's potential eligibility for an award include that the claim:

---

[4]See also Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, sec. 406(b)(1)(B), 120 Stat. at 2960 (effective Dec. 20, 2006) (providing that the WBO "shall analyze information received from any individual * * * and either investigate the matter itself or assign it to the appropriate Internal Revenue Service office").

**[*8]** • "contain[s] specific * * * information";

• "contain[s] * * * credible information";

• provides "information that the whistleblower believes will lead to collected [tax] proceeds";

• reports "fail[ure] to comply with the internal revenue laws";

• "identif[ies] the person(s) believed to have failed to comply with the internal revenue laws";

• "provide[s] substantive information, including all available documentation"; and

• does not "provide speculative information".

Lacey v. Commissioner, 153 T.C. at __ (slip op. at 24) (quoting 26 C.F.R. sec. 301.7623-1(c)(1), (4)).

The administrative record shows that the WBO received Mr. Alber's claim, evaluated its contents, and considered its allegations. The WBO even went to the extent of making a preliminary determination that it was unable to identify any of the persons or entities alleged to have violated any tax laws. The WBO made the judgment that the allegations asserted grievances other than specific and credible information alleging a failure to comply with an internal revenue law, and it determined that "the information provided [by Mr. Alber] was speculative and/or[5]

_____

[5]The Commissioner's form letter contained the same "and/or" conjunction
(continued...)

[*9] did not provide specific or credible information regarding tax underpayments or violations of internal revenue laws."

In reviewing the WBO's rejection, we do not substitute our judgment for its judgment but rather, as we have noted, review only for abuse of discretion. In deciding not to forward the claim for any further investigation by an IRS operating division, the WBO evidently performed its evaluative function. The grounds articulated by the WBO in support of its determination to reject Mr. Alber's claim do not appear to lack a sound basis in fact and law, and the rejection is reasonably supported by Mr. Alber's Form 211 and accompanying submission. Accordingly, we hold that the WBO did not abuse its discretion when it rejected Mr. Alber's claim. We will therefore grant summary judgment to the Commissioner.

To reflect the foregoing,

An appropriate order and decision will be entered.

_____

[5](...continued)
that led to unclarity in Lacey v. Commissioner, 153 T.C. __, __ (slip op. at 39-40) (Nov. 25, 2019). But on the record of this case, with the benefit of the detail in the ARM, all of the listed reasons for the rejection are warranted, so we need not pick and choose. However, we continue to be concerned that, in a closer case, this form text may create confusion when we review a summary rejection of a whistleblower claim.